IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROMARIS WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19 -CV-00804 -MAB |
| | ) |
| CHAD RAY, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Kocher, Rose, and Wilson's motion, and supporting memorandum, for summary judgment (Docs. 42, 43). For the reasons set forth below, the motion is **DENIED.**

## BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 24, 2019 for deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence") (Docs. 1, 6). Plaintiff claims that he was subjected to excessive force and denied medical treatment, in violation of his constitutional rights. *Id.* The Court conducted a threshold review pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on three claims against Defendants Ray, Williams, and four John Does (Doc. 6).

Plaintiff filed a motion for leave to file an amended complaint on May 21, 2020 (Doc. 18). In his motion, Plaintiff sought to identify the John Doe Defendants, as well as provide additional information for this third claim, which was dismissed during the first

threshold review. The Court conducted a second threshold review pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on four claims total:

> **Count 1:** Eighth Amendment excessive force and/or failure to protect/intervene claim against Ray for yanking violently and repeatedly on Plaintiff while he was handcuffed causing him to fall and suffer injuries on September 20, 2017 and against Williams, Rose, Kocher, and Wilson for failing to protect Plaintiff from the harm being inflicted by Ray.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Ray, Williams, Rose, Kocher, and Wilson for denying Plaintiff medical treatment for the injuries caused by Ray on September 20, 2017.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Ray, Williams, Rose, Kocher, and Wilson because Plaintiff was denied a crisis team after a suicide threat.
>
> **Count 4:** Eighth Amendment excessive force and/or deliberate indifference claim against Ray, Williams, Rose, Kocher, and Wilson for dragging Plaintiff up some stairs and tossing him an isolation cage with untreated injuries.

(Doc. 21).

The governing complaint, outlining the aforementioned claims, was filed immediately after the second threshold review on June 11, 2020 (Doc. 22).

Defendants Kocher, Rose, and Wilson filed their motion, and supporting memorandum, for summary judgment on February 1, 2021 (Docs. 42, 43). In their motion, Defendants Kocher, Rose, and Wilson argue that Plaintiff has not exhausted his administrative remedies prior to filing his lawsuit. Defendants Ray and Williams did not file a motion for summary judgment on the issue of exhaustion. Plaintiff filed his timely response on February 26, 2021 (Doc. 45). Because the parties' filings do not involve a

genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

## **LEGAL STANDARDS**

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available

administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

### FACTUAL BACKGROUND

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Lawrence (Doc. 22). Plaintiff alleges in his complaint that on or around September 19, 2017, he was informed that he would be moved from Lawrence to Stateville Correctional Center ("Stateville") (Doc. 21, p. 2). Plaintiff had been previously incarcerated at Stateville and, due to events that occurred there previously, he became extremely distraught at the idea of returning. *Id.* He told his unit officer he feared

for his life and requested to speak to a crisis team member. The next day, on September 20, 2017, Plaintiff spoke with a mental health doctor and was told he was on a medical hold due to his medical crisis. *Id.* At some point before this meeting, Plaintiff's clothing and shoes were taken away, so the doctor assured Plaintiff that he approved the return of his clothing and shoes. *Id.*

Plaintiff's clothing and shoes were returned, and he was handcuffed to be escorted from segregation. Once in the hallway, he saw a transport bus waiting and became distraught, detailing that he feared for his life. *Id.* He told prison staff present, including Defendants Ray, Williams, Rose, Kocher, and Wilson, that he was suicidal and requested a crisis team member. *Id.* Plaintiff alleges that Defendant Ray told him that his suicidal ideations were a problem that Stateville would have to address. Defendant Ray then violently yanked Plaintiff repeatedly while he was still handcuffed, the force of which caused Plaintiff to fall. *Id.* Defendants Williams, Rose, Kocher, and Wilson stood by and did nothing to protect Plaintiff from Defendant Ray (*Id.* at pp. 2-3).

Plaintiff alleges that as a result of being yanked repeatedly by Defendant Ray, Plaintiff's body slammed into the floor, which injured his back and buttocks (*Id.* at p. 3). Plaintiff also suffered from swollen wrists and a burning pain in his shoulders. Plaintiff cried out in pain and requested medical attention, but instead, Defendants Ray, Williams, Rose, Kocher, and Wilson picked Plaintiff up, dragged him up some stairs, and then tossed him in an isolation cage. *Id.* He was then forced to endure a six-hour bus ride while suffering from untreated injuries. *Id.*

The parties seem to agree that there is one grievance currently in the record that relates to the incident described above.[2] Plaintiff's September 20, 2017 grievance, labeled as No. 11-17-108, details the September 19, 2017 attack. Plaintiff describes how he began to have suicidal ideations when he heard he was going to be transported and saw a mental health professional for help (Doc. 43, pp. 25-26). He writes that he told Defendant Ray about his suicide attempt, to which he responded that it would be an issue for Stateville to handle (*Id.* at p. 26). Plaintiff describes the attack by Defendant Ray, explaining that he was handcuffed and then yanked around by Defendant Ray. Plaintiff also explicitly names Defendant Williams, detailing that he, in addition to a "a couple of officers," picked him up, forced him up the stairs in the transport bus, and then was thrown in an isolation cage. *Id.* Plaintiff writes, "I told them repeatedly that my back was in severe pain and my right hand was throbbing in pain." *Id.*

Plaintiff submitted the grievance to his counselor. The grievance is marked as "received" by his counselor on October 30, 2017 (*Id.* at p. 25). The counselor responded on November 2, 2017, detailing that he spoke with Defendant Ray, who stated that he did not remember this incident (*Id.* at p. 25). At some point, this grievance was then returned to Plaintiff, who then submitted the grievance to his grievance officer on November 27, 2017 (*Id.* at p. 24). The grievance officer detailed that this grievance was submitted outside

---

[2] Defendants admit that Plaintiff submitted numerous grievances to the ARB after the alleged incidents in this case, but that only one relates to the claims of this case, in particular (Doc. 43, p. 3). With that said, Defendants have not submitted a full record of Plaintiff's grievances and have only provided a copy of this one grievance.

of the 60-day time period for submitting grievances.[3] *Id.* The grievance was then reviewed by the Chief Administrative Officer ("CAO") on November 30, 2017 (*Id.* at p. 24). The CAO concurred with the Grievance Officer's report. Plaintiff then appealed this grievance to the Administrative Review Board ("ARB") on December 14, 2017. The ARB stamped this grievance as "received" on December 18, 2017. *Id.*

The ARB reviewed this grievance and returned it to Plaintiff on or around January 26, 2018 (*Id.* at p. 18). The appeal was denied, as the ARB found that the issue was appropriately addressed by the facility Administration. *Id.* Included in the packet presumably returned to Plaintiff is a series of emails between Sherry Benton from the ARB and other IDOC employees asking for information as to how Lawrence officials investigated the issues outlined by Plaintiff in this grievance (*Id.* at pp. 19-23). On January 25, 2018, Ms. Benton emailed Ms. Alisha Blake to see if Lawrence officials had interviewed Defendant Williams about this incident like they had Defendant Ray (*Id.* at p. 19). Ms. Blake forwarded the response from Defendant Williams to Ms. Benton (*Id.* at p. 20). He detailed that Plaintiff was "non compliant" and "threw himself on the floor due to him refusing to get on the bus" (*Id.* at p. 21). Defendant Williams described that there was no physical contact between Plaintiff and the staff, but that Plaintiff was

---

[3] It is unclear from the record if this grievance was truly filed outside of the appropriate timeline, as it was responded to by every necessary official as outlined by the PLRA. Plaintiff's cumulative counseling summary has not been submitted as part of either Defendants' motion for summary judgment or Plaintiff's responses. As such, the Court cannot verify if this grievance was filed outside of the appropriate time period. With that said, Defendants do not contest that this grievance was not properly filed; rather, Defendants admit that this grievance properly exhausted Plaintiff's claims pertaining to Defendants Ray and Williams.

assisted to his feet and escorted to the bus. Defendant Williams detailed that Plaintiff did not have any complaints of injuries or injuries from this incident. *Id.*

## DISCUSSION

Defendants concede that the September 20, 2017 grievance properly exhausted Plaintiff's claims relating to Defendants Ray and Williams, as they were both named in the grievance specifically. Defendants Kocher, Rose, and Wilson argue that since they were not named in this grievance, and this grievance was the only grievance to properly exhaust the claims outlined in this lawsuit, they should be dismissed from this case (Doc. 43, p. 7). Plaintiff disagrees, and argues, essentially, that he did the best he could with his September 20, 2017 grievance (Doc. 45). He outlines that he is legally illiterate, having no knowledge of the law at all (*Id.* at p. 1). Furthermore, he details that he was in a psychologically unstable mindset at the time of writing his grievance, and requested camera footage of the incident in order to identify the other IDOC employee's names, as he only knew the names of Defendants Ray and Williams. *Id.*

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the

problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

The Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). Plaintiff writes the names of two Defendants in his September 20, 2017 grievance: Ray and Williams (Doc. 43, pp. 25-26). Additionally, he detailed that other correctional officers were involved in the incident. Specifically, Plaintiff writes in this grievance:

> As I laid on my back in pain Lt. C. Ray, Lt. Williams, and a couple of officers surrounded me, picked me up, and carried me to the bus (at this point I was victim of a second deliberate indifference and denied medical needs which also violates my Eight[sic] Amendment). I was then forced up the transport bus stairs, and thrown and pushed into a[n] isolation cage.

(Doc. 43, pp. 25-26).

The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner in his position." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010). Plaintiff provided the specific names he knew and

provided detailed information about the incident he was grieving. Simply put, Plaintiff did the best he could to grieve the situation as it unfolded based on what he knew *at the time*. Furthermore, Plaintiff detailed that he did not have the information necessary at the time he was filing his grievances to name the other Defendants. In support of this argument, he listed them as John Doe Defendants in his complaint. In fact, he did not learn of their specific names until he requested leave of the Court to file an amended complaint on May 21, 2020 (Doc. 18).

Additionally, Plaintiff's September 20, 2017 grievance is very detailed, spilling onto a second page (Doc 43, pp. 25-26). Each Lawrence official, including the counselor and CAO, as well as the ARB was able to read through the grievance and respond to it. In fact, the ARB even reached out to officials at Lawrence to investigate whether Defendant Williams, like Defendant Ray, had been interviewed about this incident. Identifying the other staff members who were present for this incident would be in the control of the IDOC and the Defendants, and not Plaintiff. The purpose of the PLRA is to put prison officials on notice of a problem and invite corrective action; it is not designed to put specific Defendants on notice of a potential lawsuit. *See, e.g., Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."). Under these circumstances, Plaintiff's failure to specifically name all currently listed correctional officer Defendants did not limit the usefulness of the exhaustion requirement. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

## CONCLUSION

Defendant's motion for summary judgment is **DENIED.** The stay on merits-based discovery (*see* Doc. 41) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: August 2, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
